IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| Georgia Artz, Lisa Belgarde, Emily Davis, and Sonia Zerr, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 3:05-cv-51 |
| United States of America, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is defendant's motion for summary judgment (Doc. #31).  For the following reasons, the court **GRANTS** the motion for summary judgment.

**I.      Factual Background**

The parties are well-versed in the factual history of this case and agree on most of the pertinent facts.  Furthermore, the court takes judicial notice of the facts as described in a related case, Buckles, et al., v. Indian Health Services, et al., 310 F. Supp. 2d 1060 (D.N.D. 2004).  Thus, the court will briefly summarize the facts in order to provide a context for this memorandum opinion.

Georgia Artz, Lisa Belgarde, Emily Davis, and Sonia Zerr [hereinafter "plaintiffs"] allege defendant violated their rights under the Privacy Act. *Complaint, Doc. #1.*  Artz works as the Director of Public Health Nursing at an Indian Health Service ("IHS") facility, the Quentin N. Burdick Memorial Health Care Facility, in Belcourt, North Dakota.  She also serves as a member of the Governing Board of IHS and the Risk Management Committee.  Lisa Belgarde, Emily Davis, and Sonia Zerr worked in the billing department at the Belcourt IHS facility.  In 2000,

1

Belgarde, Davis, and Zerr approached Artz with several concerns, including a concern that

certain IHS administrators, including Dale Buckles and Shelly Harris, were allegedly receiving

prescriptions for narcotics through improper procedures and in questionable quantity.  Artz

raised the concerns with others and eventually prepared a written memorandum outlining the

issues and her findings.  In addition, a computer list was generated detailing the patients,

apparently listed by their account numbers, who had received the drug prescriptions in question.

Ultimately, Dale Buckles and Shelly Harris alleged that their confidential medical information

was shared with members of the Turtle Mountain Tribal Council.  Buckles and Harris[1] filed suit

in this court alleging that Artz, Belgarde, Davis, and Zerr [2] violated their rights under the Privacy

Act.

      In April 2001, Madonna Long, Program Officer for Health Information Management at

the IHS office in Aberdeen, South Dakota, conducted a Privacy Act investigation of the claims

against Artz, Belgarde, Davis, and Zerr.  She prepared a report [hereinafter the "Long Report"]

in June 2001 summarizing the results of her investigation.  *Declaration of Madonna Long, Doc.

#33-1*.  The Long report concluded Artz, Belgarde, and Zerr had violated the Privacy Act rights

of Buckles and Harris.  The Long Report further recommended disciplinary action be taken.  The

Department of Health and Human Services considered Long's Report a predecisional

recommendation.  *Declaration of Patricia Mantoan,  Doc. #33-2*.

      The Office of Inspector General later issued an opinion which contradicted the

---

[1] The suit originally involved a third administrator, who later dismissed her claims.

[2] IHS was later substituted as the named defendant in place of the individually named
defendants, Artz, Belgarde, Davis, and Zerr.

conclusions of the Long Report. *Declaration of Patricia Mantoan, Doc. #33-2.* Long placed her report in a binder containing other Privacy Act allegations, which was kept at the IHS office in Aberdeen, South Dakota. Claims placed in the binder were filed chronologically by the date of the initial complaint to facilitate a two-year destruction policy. *Declaration of Madonna Long, Doc. #33-1.*

In October 2001, David Reich, attorney for Buckles and Harris, requested copies of the investigative reports in the Buckles matter report pursuant to the Freedom of Information Act (FOIA). *Letter from David Reich, Attachment to Declaration of Patricia Mantoan, Doc. #33-2.* His request stated his understanding that subsequent to August 16, 2001, a report had been prepared about the Privacy Act violations asserted by his clients. He specifically requested "a copy of the IHS investigation report regarding the alleged Privacy Act violations." *Letter from David Reich, Attachment to Declaration of Patricia Mantoan, Doc. #33-2.* He sent other letters requesting the same information. Each time he described the circumstances and significant dates precipitating the preparation of the Long Report. *Letters from David Reich, Attachment to Plaintiffs' Statement of Disputed Material , Doc. #37-2.* Attorney Reich received a redacted copy of the Long report on January 2003 from Leslie Morris, Director of the Division of Regulatory and Legal Affairs and FOIA officer. *Letter from Leslie Morris, Attachment to Declaration of Patricia Mantoan, Doc. #33-2.*

On February 28, 2003, Attorney Reich sent a letter to David Peterson, the Assistant United States Attorney handling the Buckles matter, mentioning the disclosure of the Long Report. *Letter from David Reich to David Peterson, Attachment to Declaration of Patricia Mantoan, Doc. #33-2.* Attorney Reich later received a letter from Leslie Morris stating that the

Long Report had been disclosed in error and was "a mistaken disclosure of exempt information." *Letter from Leslie Morris, Attachment to Declaration of Patricia Mantoan, Doc. #33*-2.  Reich also received an unredacted copy of the Long report from an unknown person.  The report was apparently sent to attorney Reich with a note which stated, "Go after these people for what they have done to you."  *Deposition testimony of Georgia Artz, Attachment to Plaintiffs's Statement of Material Facts, Doc. #33-8.*

Following a bench trial in March 2004, the Honorable Daniel L. Hovland dismissed the case brought by Buckles and Harris.  See Buckles, et al., v. Indian Health Services, et al.,310 F. Supp. 2d 1060 (D.N.D. 2004).

Artz, Belgarde, Davis, and Zerr–as plaintiffs in this case–allege the disclosure of the Long report was a violation of their rights under the Privacy Act.  Thus, the present action, alleging a Privacy Act violation, arises from the Buckles case which also alleged a Privacy Act violation.  This court previously denied defendant's motion to dismiss, which argued plaintiffs' action was time-barred (Doc. #26).

## II.      Summary Judgment Standard

Summary judgment is appropriate if there is not a genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. Pro. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment . . . against a party failing to make a showing sufficient to establish the existence of an element essential to that party's case."  Celotex, 477 U.S. at 322.  If the moving party has supported its motion for summary judgment, the nonmoving party has an affirmative burden placed on it to go beyond the pleadings and show a genuine triable issue of

fact.  Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992).  However, the court considering a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party who enjoys "the benefit of all reasonable inferences to be drawn from the facts."  Vacca v. Viacom Broadcasting of Missouri, Inc. Et al., 875 F.2d 1337, 1339 (8th Cir. 1989) (citation omitted).

Summary judgment is improper if the court finds a genuine issue of material fact; however, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." Commercial Union Insurance Co. v. Schmidt, 967 F.2d 270, 271-72 (8th Cir. 1992) (citation omitted).  The issue is whether "the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party."  Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995).

**III.    Privacy Act**

The Privacy Act of 1974 was enacted to govern the collection, maintenance, use, and dissemination of information by federal agencies.  Doe v. Chao, 540 U.S. 614, 618 (2004); 5 U.S.C. § 552a.  "The Act gives agencies detailed instructions for managing their records and provides for various sorts of civil relief to individuals aggrieved by failures on the Government's part to comply with the requirements."  Doe, at 618.  The Act prohibits the disclosure of covered information unless the individual whose information is disclosed authorizes the disclosure by prior written consent or if an exception under the Act applies.  See 5 U.S.C. § 552a(b).

In order to prevail on a Privacy Act claim, plaintiff must show that an agency disclosed protected information; the information was retrieved from a system of records that the agency maintained; and the agency intentionally and willfully released the information.  See Buckles,

5

310 F. Supp. 2d at 1068; 5 U.S.C. § 552a.  In order to recover damages, plaintiff must demonstrate that the violation had an adverse impact on him or her and that the agency acted intentionally or willfully.  Buckles, 310 F. Supp. 2d at 1068 (citing 5 U.S.C. § 552a(g)(1)(D), (g)(4); Wisdom v. Dept. of Hous. & Urban Dev., 713 F.2d 422, 424 (8th Cir. 1983)).  The United States' memorandum in support of its motion to dismiss methodically dissects each element of plaintiff's claim under the Privacy Act.  However, this court will focus on what it considers the dispositive issue of this case–whether the Long report was retrieved from a "system of records" as contemplated by the Privacy Act.

**IV.    Analysis**

Courts generally broadly construe what information constitutes a "record" within the meaning of the Privacy Act.  See Williams v. Department of Veterans Affairs, 104 F.3d 670, 673 (4th Cir. 1997) (citing numerous cases of information held to be a "record" under the Act).  The parties appear to agree that the Long Report is a "record," and the court's analysis proceeds on that assumption.  However, the Privacy Act pertains only to those records "which [are] contained in a system of records."  5 U.S.C. § 552a(b).  According to the Act, "the term 'system of records' means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).  In Bechhoefer v. United States DOJ, the Second Circuit Court of Appeals noted:

> The definition of "system of records" limits the applicability of some of the provisions of the Act to "records" which are maintained by an agency, retrieved by individual identifier (i.e., there is an indexing or retrieval capability using identifying particulars . . . built into the system), *and* the agency does, in fact, retrieve records about individuals by reference to some personal identifier.

Bechhoefer v. United States DOJ, 312 F.3d 563, 566 (2d Cir. 2002) (emphasis in original)

(quoting Privacy Act Guidelines, reprinted in Legislative History of the Privacy Act of 1974:

Source Book on Privacy 1027 (1976)).

The Bechhoefer case cites multiple cases addressing the issue of what constitutes a

"system of records."  Bechhoefer, 312 F.3d at 566.  For example, the Eleventh Circuit Court of

Appeals held that a memorandum that "was kept within a random-type file and could only be

retrieved by searching through the file" was not in a system of records.  Boyd v. Secretary of the

Navy, 709 F.2d 684, 686-87 (11th Cir. 1983).  The Eleventh Circuit reasoned that the

memorandum was not "keyed to [claimant's] name or any identifying number which would

subject it to the purpose behind the Privacy Act of protecting information from being gathered

through computers or other sophisticated technological equipment. It was kept within a random-

type file and could only be retrieved by searching through the file."  Id.

Similarly, the Tenth Circuit Court of Appeals held that information in a file marked

"Ethics," but not linked to plaintiff, was not within a system of records.  Gowan v. U.S. Dep't of

the Air Force, 148 F.3d 1182, 1191 (10th Cir. 1998).  See also Henke v. United States Dep't of

Commerce, 83 F.3d 1453, 1459-61 (D.C. Cir. 1996) (statutory language "suggests strongly that a

group of records should generally not be considered a system of records unless there is actual

retrieval of records keyed to individuals"); Bartel v. Federal Aviation Admin., 725 F.2d 1403,

1408 n.10 (D.C. Cir. 1984) ("To be in a system of records, a record must be under the agency's

control, and, in practice, retrieved by an individual's name or other personal identifier."); Baker

v. Department of Navy, 814 F.2d 1381, 1384 (9th Cir. 1987) (The term "system of records"

depends on the method of retrieving a record rather than the record's substantive content.).

7

The court finds the cases cited by plaintiffs to support their assertion that this case meets the requirements of a "system of records" are distinguishable.  In Jacobs v. Nat'l Drug Intelligence Ctr., 423 F.3d 512, 516-517 (5th Cir. 2005), the record at issue was in fact retrieved from an electronic document system using the individual's name as a search term.  The Ninth Circuit Court of Appeals' decision in Wilborn v. Department of Health & Human Servs., was "based on the unusual and egregious facts of th[e] case" and the "sophisticated information collecting methods [used] to acquire personal information."  49 F.3d 597, 601 (9th Cir. 1995). This court is not faced with the peculiar facts or the sophisticated system described in Wilborn. Finally, plaintiffs cite Bartel v. Federal Aviation Admin., 223 U.S. App. D.C. 297 (D.C. Cir. 1984), which focused primarily on what constitutes a disclosure of information from a "record" versus disclosure of information based on independent knowledge.  The issue in the current case does not arise from similarly layered levels of knowledge and disclosure.

The court notes that attorney Reich requested the Long Report under the FOIA by specifically asking for "a copy of the IHS investigation report regarding the alleged Privacy Act violations [against Buckles and Harris]."  *Letter from David Reich, Attachment to Declaration of Patricia Mantoan, Doc. #33-2.*  Plaintiffs argue that "Attorney Reich requested the information specifically naming the Plaintiffs."  *Brief in Opposition to Defendant's Motion for Summary Judgment, Doc. #36, at 6.*  The court acknowledges that Reich's request did name the plaintiffs, as well as the names of his clients, Buckles and Harris.  However, plaintiffs have offered no evidence that defendant retrieved the report using plaintiffs' names.  According to defendant, the Long report was stored in a binder containing other Privacy Act allegations.  *Declaration of Madonna Long, Doc. #33-1.*  The documents were placed in the binder according to the date of

the initial complaint.  *Declaration of Madonna Long,  Doc. #33-1*.  Madonna Long stated:

> The . . . report was retrieved by date.  When I needed to reference the case, I paged through the binder until I found the documentation related to this allegation.  There were no names or numbers assigned to the complaints, just the date used from the initial complaint filed chronologically so the complaints could be purged easily as the disposition dates occurred. . . .

*Declaration of Madonna Long,  Doc. #33-1*.  Long declared her report "was not filed under any individual's name or identifier."  *Id.*  Based on the record before the court, plaintiffs have not demonstrated that the Long report was filed, cross-referenced, or retrieved based on the plaintiffs' names as individuals, or to any other type of identifying characteristic such as a social security number.

The court concludes that plaintiffs have not demonstrated that a "system of records," as defined in the Privacy Act, exists in this case.  Because of this finding, the court will not address defendant's other arguments as a basis for summary judgment.

For the foregoing reasons, defendant's motion for summary judgment (Doc. #31) is **GRANTED**.   Judgment of dismissal is ordered.

Dated this 20th day of April, 2007.

 /s/ *Karen K. Klein*
Karen K. Klein
United States Magistrate Judge